**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| BRENDA GEIGER, CLAUDIA SAMPEDRO, JAIME EDMONDSON-LONGORIA, JESSICA HINTON A/K/A JESSA HINTON, and PAOLA CAÑAS, <br><br> Plaintiffs, <br><br> - against - <br><br> VOLA, CORP. d/b/a SORRY NOT SORRY and GEORGIOS ASPIOTIS, <br><br> Defendants. | Case No. _____ <br><br><br><br><br><br><br><br> **COMPLAINT** <br><br> (Jury Trial Demanded) |

Plaintiffs BRENDA GEIGER, CLAUDIA SAMPEDRO, JAIME EDMONDSON-LONGORIA, JESSICA HINTON A/K/A JESSA HINTON, and PAOLA CAÑAS (collectively, "Plaintiffs"), by and through their undersigned counsel, as and for their Complaint ("Complaint") against defendants VOLA CORP. d/b/a SORRY NOT SORRY and GEORGIOS ASPIOTIS (collectively "Defendants"), respectfully allege as follows:

**BACKGROUND**

1. This is an action for damages and injunctive relief relating to Defendants' misappropriation, alteration, and unauthorized publication of images of Plaintiffs, each of whom are world renowned professional models, to promote their Club, Sorry Not Sorry ("Sorry Not Sorry"), in Forest Hills, New York.

2. As detailed below, Defendants' misappropriation and unauthorized use of Plaintiffs' images, photos and likenesses (collectively, "Images"), constitutes, at minimum: a) violation of section 43 of the Lanham Act, 28 U.S.C. § 1125(a), which prohibits both false advertising and false or misleading use of a person's image for purposes of advertising; b)

violation of New York Civil Rights Law §§ 50-51, which protects a person's right to privacy and publicity; and c) violation of New York's Deceptive Trade Practices Act (New York G.B.L. §349) which prohibits deceptive business practices.

3. In addition to the actual, punitive and exemplary damages set forth below, Plaintiffs likewise seek an Order from this Court permanently enjoining Defendants from using their Images to promote any Club, via any medium.

## JURISDICTION & VENUE

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs have stated claims under, *inter alia*, the Lanham Act, 28 U.S.C. § 1125(a)(1), and jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

5. As set forth immediately below, Plaintiffs are, and at all times relevant to this action have been, professional models who reside throughout the United States.

6. According to publicly available records, defendant Vola Corp. ("Vola Corp.") is a corporation formed under the laws of the state of New York, with its principal place of business located at 70-15 Austin Street, Forest Hills, New York 11375.

7. Upon information and belief, defendant Georgios Aspiotis ("Aspiotis") is a resident of the State of New York, and at all relevant times was the owner, principal and/or chief executive officer of Vola Corp.

8. Venue is proper in the United States District Court for the Eastern District of New York because Queens County is Defendants' principal place of business.

9. All parties have minimum contacts with Queens County, a significant portion of the alleged causes of action arose and accrued in Queens County, and the center of gravity for a significant portion of all relevant events alleged in this complaint is predominately located in

Queens County.

## PARTIES

*Plaintiffs*

10. Plaintiff Brenda Geiger ("Geiger") is a well-known professional model, and a resident of Onondaga County, New York.

11. Plaintiff Claudia Sampedro ("Sampedro") is a well-known professional model, and a resident of Miami-Dade County, Florida.

12. Plaintiff Jaime Edmondson-Longoria ("Longoria") is a well-known professional model, and a resident of Pinellas County, Florida.

13. Plaintiff Jessica Hinton a/k/a Jessa Hinton ("Hinton") is a well-known professional model, and a resident of Los Angeles County, California.

14. Plaintiff Paola Cañas ("Cañas") is a well-known professional model, and a resident of Miami-Dade County, Florida.

*Defendants*

15. According to publicly available records, defendant Vola Corp. is formed under the laws of the state of New York. During times relevant to this action, Vola Corp operated Sorry Not Sorry, an Club located at 70-15 Austin Street, Forest Hills, New York 11375.

16. Upon information and belief, Aspiotis, in his capacity as the owner, principal and/or chief executive officer of Vola Corp. maintains operational control over Sorry Not Sorry, including all advertising relating thereto and did so during all times relevant to the allegations herein.

## FACTUAL ALLEGATIONS

17. As set forth immediately below, each Plaintiff is an extremely well-known

professional model who earns her livelihood modeling and selling her Images to companies, magazines and individuals for the purpose of advertising products and services.

18. Plaintiffs' careers in the modeling industry place a high degree of value on their good will and reputation, which is critical in order to maximize their earning potential, book modeling contracts, and establish each of their individual brands. In furtherance of establishing, and maintaining, their brands, Plaintiffs are necessarily selective concerning the companies, and brands, for which they model.

19. Each of the Plaintiffs' Images was misappropriated, and intentionally altered, by one or more of the Defendants in order to make it appear that they worked at or endorsed Sorry Not Sorry.

20. In the case of each and every Plaintiff, such appearance was false.

21. Moreover, in each and every case, this misappropriation occurred without any of the Plaintiffs' knowledge, consent or authorization, at no point did any Plaintiff ever receive any remuneration for Defendants' improper and illegal use of their Images, and Defendants' improper and illegal use of Plaintiffs' Images have caused each Plaintiff to suffer substantial damages.

*Plaintiffs' Backgrounds and Careers*

22. Geiger is a successful model and actress. Geiger is best known for her work for *Glamour Magazine* and an appearance on *The Howard Stern Show* in a Miss HTV March contest. Geiger has been featured in numerous popular magazines such as *Show, Maxim,* and *Raw*. Geiger has also been featured on numerous product campaigns such as Primitive Clothing, where she currently has her own custom skateboard decks.

23. That we know of, Geiger is depicted in the photos in Exhibit "A" to promote Sorry Not Sorry on its Instagram and Facebook page. These Images were intentionally altered to

make it appear that Geiger was either an employee working at Sorry Not Sorry, or that she endorsed the Club.

24. Geiger has never been employed at Sorry Not Sorry, has never been hired to endorse Sorry Not Sorry, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

25. Sampedro is a Cuban born model, mother and spokeswoman. Sampedro moved to Miami when she was 6 years old and at 16, was discovered by Elite models. Sampedro has appeared in many catalogues, magazine editorials and has a number of cover credits for magazines such as *Nine 5 Four, Shock, Face to Face* and *Mixed*. Sampedro is a sponsored model for Nutri Sups Nutrition and is also a spokesmodel and contracted model for Bare Ava. She has also appeared in the reality series WAGS Miami. Sampedro is in a Social Media Influencers top class with a million Instagram followers and a further combined half million fans on Facebook and Twitter. [1] Sampedro is engaged to and has a baby with Carolina Panther's star defensive end Julius Peppers.

26. That we know of, Sampedro is depicted in the photos in Exhibit "B" to promote Sorry Not Sorry on its Instagram page. These Images were intentionally altered to make it appear that Sampedro was either an employee working at Sorry Not Sorry, or that she endorsed the Club.

27. Sampedro has never been employed at Sorry Not Sorry, has never been hired to endorse Sorry Not Sorry, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

---

[1] In the modeling industry, the number of online followers a model has is a strong indication of her popularity and, thus, earning potential.

28. Longoria is a graduate of Florida Atlantic University, a former police officer and Miami Dolphins cheerleader, and was the January 2010 *Playboy* Playmate of the Month. Edmondson was a participant in the competitive reality TV series *The Amazing Race 14*, has served as a sports blogger for Playboy online and co-host of Sirius Fantasy Sports Radio, and has appeared in *The Bunny House* documentary, in the Trace Adkins video for "This Aint No Love Song" and numerous other television, print, radio and online outlets. Edmondson has two children with her husband, Major League Baseball superstar, Evan Longoria.

29. That we know of, Longoria is depicted in the photos in Exhibit "C" to promote Sorry Not Sorry on its Facebook and Instagram page. This Image was intentionally altered in order to make it appear that Longoria was either an employee working at Sorry Not Sorry, or that she endorsed the Club.

30. Longoria has never been employed at Sorry Not Sorry, has never been hired to endorse Sorry Not Sorry, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

31. Hinton is a model, actress, and host. Hinton was first introduced to the entertainment industry at age 14 when she was discovered by a talent manager at a wedding. She immediately booked three national TV commercials and guest appeared on *Baywatch* and *7th Heaven* by the age of 16. At the age of 18, Hinton began working runway shows and doing print campaigns. In 2010, she became the face of the Palms Hotel & Casino's 2010 ad campaign. Hinton then expanded to TV personality roles having hosted for *Victory Poker*, and as an interview personality for the *Top Rank Boxing* interviewing the likes of Manny Pacquiao and Shane Mosley. In 2011, Hinton was selected as the *Playboy* Playmate of the Month for July 2011, becoming one of the most popular Playmates of that year. She then became the centerpiece

of an advertisement campaign for Milwaukee's Best Beer in conjunction with Playboy Enterprises.

32. That we know of, Hinton is depicted in the photo in Exhibit "D" to promote Sorry Not Sorry on its Facebook page. This Image was intentionally altered to make it appear that Hinton was either an employee working at Sorry Not Sorry, or that she endorsed the Club.

33. Hinton has never been employed at Sorry Not Sorry, has never been hired to endorse Sorry Not Sorry, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

34. Cañas is a Colombian born model now residing and working in the United States. Cañas has been in the industry for over twelve years and has found great success as a model, host, runway model, and actor. Cañas has worked runway shows in her native Colombia, as well as Mexico, Ecuador, United States, and most recently in Paris, France. She heads up the international campaign and was a contracted model for Curve and their worldwide lingerie line. In Dubai, United Arab Emirates, Cañas was chosen as the face of the Masters Gold Tournament, and was the image for the "International Surf and Sport Expo" in Orlando, FL. She has worked for international brands and labels such as SOHO, KISS underwear, Salon International, Zona Rosa, and Esteban Escobar. She has appeared in numerous TV shows like "FOX Sports" and on TV networks such as Telemundo and TV Azteca. Cañas continues to build an impressive profile and is constantly in demand between Miami, FL, New York, NY, and Los Angeles, CA. Cañas has 384,000 Instagram followers and over 9,100 Facebook likes.

35. That we know of, Cañas is depicted in the photos in Exhibit "E" to promote Sorry Not Sorry on its Facebook and Instagram page. This Image was intentionally altered to make it appear that Cañas was either an employee working at Sorry Not Sorry, or that she endorsed the

Club.

36. Cañas has never been employed at Sorry Not Sorry, has never been hired to endorse Sorry Not Sorry, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

*Defendants' Business*

37. Upon information and belief, Vola Corp. has operated, during the relevant time period, Sorry Not Sorry, where it engages or has engaged in the business of selling alcohol and food in an atmosphere were employees entertain the business' clientele.

38. Upon information and belief, and in furtherance of its promotion of Sorry Not Sorry, Vola Corp. owns, operates and controls Sorry Not Sorry's social media accounts, including the Sorry Not Sorry's Facebook, Twitter, and Instagram accounts.

39. Vola Corp. used Sorry Not Sorry's Facebook, Twitter, and Instagram accounts to promote Sorry Not Sorry, and to attract patrons thereto.

40. Vola Corp. did this for its own commercial and financial benefit.

41. Vola Corp. has used, advertised, created, printed and distributed the Images of Plaintiffs, as further described and identified above, in order to create the false impression with potential clientele that each Plaintiff either worked as an employee at Sorry Not Sorry or endorsed Sorry Not Sorry.

42. Vola Corp. used Plaintiffs' Images and created the false impression that they worked at or endorsed Sorry Not Sorry to receive certain benefits therefrom, including but not limited to: monetary payments; increased promotional, advertising, marketing, and other public relations benefits; notoriety; publicity; as well as an increase in business revenue, profits, proceeds, and income.

43. As Vola Corp. was at all times aware, at no point has any of the above named Plaintiffs ever been affiliated with or employed by Sorry Not Sorry and at no point have any of the Plaintiffs ever endorsed Sorry Not Sorry.

44. All of Vola Corp.'s activities, including its theft of Plaintiffs' Images, and publication of same, were done without the knowledge or consent of Plaintiffs, and Vola Corp. did not compensate Plaintiffs for its use of their Images.

45. As such, Plaintiffs have never received any benefit for Vola Corp.'s use of their Images.

*Standard Business Practices in the Modeling Industry*

46. It is common knowledge in the modeling industry that the hiring of a model for a commercial purpose involves a particularized methodology and process.

47. The fee that a professional model, such as each of the Plaintiffs, will receive is negotiated by her agency, and involves consideration of, without limitation, at least the following factors: a) the reputation, earning capacity, experience, and demand of that particular model; b) the location where the photo shoot takes place, and the length thereof; c) where and how the images are going to be used by the client (*e.g.*, company website, social media, television commercials, billboards or posters), known as "usage"; and, d) the length of time (known as the "term") the rights to use the photos will be assigned. Most licenses to use a model's image are for 1, 2, or 3 year terms; but almost never is there a "lifetime" term.

*Defendants' Theft of Plaintiffs' Images*

48. As detailed above, Defendants knowingly, and without the prior consent of any of the Plaintiffs, invaded Plaintiffs' privacy by using Plaintiffs' Images for commercial purposes in order to promote Sorry Not Sorry by and through various marketing and promotional mediums

including, without limitation, the Sorry Not Sorry's website, Twitter, Facebook, and Instagram.

49. Defendants showcased Plaintiffs' Images on Sorry Not Sorry's social media pages to create the false impression that Plaintiffs worked at Sorry Not Sorry's or endorsed the same.

50. Defendants did so to attract clientele to Sorry Not Sorry, promote Sorry Not Sorry, and thereby generate revenue for Defendants.

51. Defendants were aware that, by using Plaintiffs' Images, they were violating Plaintiffs' right to privacy, Plaintiffs' right of publicity, and creating a false impression to potential customers that Plaintiffs worked at and/or endorsed Sorry Not Sorry.

52. Plaintiffs allege that any improper or unauthorized use of their Images substantially injures their careers.

53. This is especially so insofar as each of Plaintiffs' Images have been associated with the Club, and the implication of Defendants' use of Plaintiffs' Images is that they are employees at the Club.

54. At no point were any of the Plaintiffs ever affiliated with Sorry Not Sorry, or Defendants.

55. Each of Plaintiffs' Images was used without her consent.

56. At no point was any Plaintiff ever contacted by any Defendant, or any representative of any of the Defendants, to request the use of any of Plaintiffs' Images.

57. No Defendant ever obtained, either directly or indirectly, permission to use any of Plaintiffs' Images.

58. No Defendant ever paid any Plaintiff for its use of her Images on any promotional materials, including the Sorry Not Sorry's website, Twitter, Facebook, or Instagram accounts.

59. Defendants used Plaintiffs' Images without their consent, and without providing

remuneration, in order to permanently deprive each of the Plaintiffs of her right to use her Images.

60. Upon information and belief, Defendants have taken the foregoing actions with the intent of causing irreparable harm to each of the Plaintiffs.

### FIRST CAUSE OF ACTION
(Violation of §43 of the Lanham Act, 15 U.S.C. §1125 *et seq.*:
False Endorsement)

61. Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

62. The provisions of the Lanham Act, 215 U.S.C. §1125, *et seq*. apply to Defendants, and protect Plaintiffs from the conduct described herein.

63. Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from making any false or misleading representation of fact or false designation of origins which "is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person…." 15 U.S.C. §1125(a)(1)(A).

64. Defendants used Plaintiffs image, likeness and/or identity as described herein without authority in order to create the perception that Plaintiffs worked at or were otherwise affiliated with Sorry Not Sorry, endorsed Defendants' businesses and activities, and/or consented to or authorized Defendant to use her image in order to advertise, promote, and market Defendants' businesses, Sorry Not Sorry, and/or Sorry Not Sorry's events and activities.

65. Defendants' use of Plaintiffs' image, likeness and/or identity to advertise, promote and market Defendant's business and activities as described in this Complaint was false

and misleading and likely to cause consumer confusion.

66. Defendants' unauthorized use of Plaintiffs image, likeness and/or identity as described in this Complaint constitutes false endorsement by suggesting or implying, among other things, that Plaintiffs worked at or were otherwise affiliated with Sorry Not Sorry and/or endorsed Defendants' business, events or activities, or consented to or authorized Defendants' usage of her image in order to advertise, promote, and market Defendants' business, events and activities and/or that Plaintiffs would participate in or appear at the specific events promoted in the advertisements.

67. Defendants' false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons of Sorry Not Sorry, as to the general quality of attendees and participants of Sorry Not Sorry and in their events, as well as specifically whether Plaintiffs worked at or were otherwise affiliated with Sorry Not Sorry, endorsed Defendants' business, events or activities, or consented to or authorized Defendants' usage of her image in order to advertise, promote, and market Defendants' businesses or Sorry Not Sorry's events and activities.

68. Upon information and belief, Defendants' false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Plaintiffs' worked at or were otherwise affiliated with Sorry Not Sorry, endorsed Defendants' business, events and activities, or consented to or authorized Defendants' usage of her image in order to advertise, promote, and market Defendants' business or Sorry Not Sorry's events and activities. Among other things, upon information and belief, such unauthorized use misled and served to entice consumers and prospective consumers to attend Sorry Not Sorry and participate in events at Sorry Not Sorry and had a material effect and impact on the decision of members and prospective members and

participants to visit Sorry Not Sorry and take part in the events at Sorry Not Sorry.

69. Defendants' advertisements, promotions and marketing of Sorry Not Sorry and events at Sorry Not Sorry occur in and are targeted to interstate commerce. Specifically, Defendants promote their businesses and events through interstate promotions and campaigns to target persons from different states throughout the United States. Defendants principally use the World Wide Web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure attendance at Sorry Not Sorry.

70. Defendants' unauthorized use of Plaintiffs' image, likeness and/or identity as described herein was designed to benefit Defendants' businesses interests by, among other things, promoting Sorry Not Sorry and its activities and attracting clientele to Sorry Not Sorry.

71. Defendants knew or should have known that their unauthorized use of Plaintiffs' image, likeness and/or identity would cause consumer confusion as described in this Complaint.

72. Defendants' unauthorized use of Plaintiffs' image, likeness and/or identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

73. Defendants' wrongful conduct as described herein was willful.

74. As such, the present case is an exceptional case warranting an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

75. Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Plaintiffs of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Plaintiffs.

76. The method and manner in which Defendants used the images of Plaintiffs further evinces that Defendant were aware of or consciously disregarded the fact that Plaintiffs did not

consent to Defendants' use of the image to advertise Defendants businesses.

77. Defendants have caused irreparable harm to Plaintiffs, their reputation and brand by attributing to Plaintiffs the strip club lifestyle and activities at Sorry Not Sorry.

78. Defendants' unauthorized use of Plaintiffs' image, likeness and/or identity directly and proximately caused and continue to cause damage to Plaintiffs in an amount to be determined at trial.

### SECOND CAUSE OF ACTION
### (Violation of §43 of the Lanham Act, 15 U.S.C. §1125 *et seq*.: False Advertising)

79. Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

80. The provisions of the Lanham Act, 215 U.S.C. §1125, *et seq*. apply to Defendants, and protect Plaintiffs from the conduct described herein.

81. Specifically, the Lanham Act prohibits a party in commercial advertising and promotion from "misrepresent[ing] the nature, characteristics, qualities or geographic origin of his or her or another person's goods, services or commercial activities . . .". 15 U.S.C. §1125(a)(1)(B).

82. Defendants used Plaintiffs image, likeness and/or identity as described herein without authority in order to create the perception that Plaintiffs worked at or were otherwise affiliated with Sorry Not Sorry, endorsed Defendant's businesses and activities, and/or consented to or authorized Defendant to use her image in order to advertise, promote, and market Defendants' businesses, Sorry Not Sorry, and/or Sorry Not Sorry's events and activities.

83. Defendants' use of Plaintiffs' image, likeness and/or identity to advertise, promote and market Defendant's business and activities as described in this Complaint was false and misleading.

84. Defendants' unauthorized use of Plaintiffs image, likeness and/or identity as described in this Complaint constitutes false advertising by suggesting or implying, among other things, that Plaintiffs worked at or were otherwise affiliated with Sorry Not Sorry, endorsed Defendants' business, events or activities, or consented to or authorized Defendants' usage of her image in order to advertise, promote, and market Defendants' business, events and activities and/or that Plaintiffs would participate in or appear at the specific events promoted in the advertisements.

85. Defendants' false advertising described above has the capacity or tendency to confuse consumers, including actual and prospective patrons of Sorry Not Sorry, as to the general quality of attendees and participants of Sorry Not Sorry and in their events, as well as specifically whether Plaintiffs worked at or were otherwise affiliated with Sorry Not Sorry, endorsed Defendant's business, events or activities, or consented to or authorized Defendants' usage of her image in order to advertise, promote, and market Defendants' businesses or Sorry Not Sorry's events and activities.

86. Upon information and belief, Defendants' false advertising described above did, in fact, deceive and/or cause consumer confusion as to whether Plaintiffs' worked at or were otherwise affiliated with Sorry Not Sorry, endorsed Defendants' business, events and activities, or consented to or authorized Defendants' usage of her image in order to advertise, promote, and market Defendants' business or Sorry Not Sorry's events and activities. Among other things, upon information and belief, such unauthorized use misled and served to entice consumers and prospective consumers to attend Sorry Not Sorry and participate in events at Sorry Not Sorry and had a material effect and impact on the decision of members and prospective members and participants to visit Sorry Not Sorry and take part in the events at Sorry Not Sorry.

87. Defendants' advertisements, promotions and marketing of Sorry Not Sorry and events at Sorry Not Sorry occur in and are targeted to interstate commerce. Specifically, Defendants promote their businesses and events through interstate promotions and campaigns to target persons from different states throughout the United States. Defendants principally use the World Wide Web, social media and other vehicles of interstate commerce to advertise, market, promote, and entice or lure attendance at Sorry Not Sorry.

88. Defendants' unauthorized use of Plaintiffs' image, likeness and/or identity as described herein was designed to benefit Defendants' businesses interests by, among other things, promoting Sorry Not Sorry and its activities and attracting clientele to Sorry Not Sorry.

89. Defendants knew or should have known that their unauthorized use of Plaintiffs' image, likeness and/or identity would cause consumer confusion as described in this Complaint.

90. Defendants' unauthorized use of Plaintiffs' image, likeness and/or identity as described herein violates 15 U.S.C. §1125(a) and was wrongful.

91. Defendants' wrongful conduct as described herein was willful.

92. As such, the present case is an exceptional case warranting an award of reasonable attorneys' fees pursuant to 15 U.S.C. § 1117.

93. Defendants had actual or constructive knowledge of the wrongfulness of their conduct, acted with intent to deprive Plaintiffs of a property interest, and further acted with actual or constructive knowledge of the high probability that injury or damage would result to Plaintiffs.

94. The method and manner in which Defendants used the images of Plaintiffs further evinces that Defendant were aware of or consciously disregarded the fact that Plaintiffs did not consent to Defendants' use of the image to advertise Defendants businesses.

95. Defendants have caused irreparable harm to Plaintiffs, their reputation and brand by attributing to Plaintiffs the strip club lifestyle and activities at Sorry Not Sorry.

96. Defendants' unauthorized use of Plaintiffs' image, likeness and/or identity directly and proximately caused and continue to cause damage to Plaintiffs in an amount to be determined at trial.

### THIRD CAUSE OF ACTION
**(Violation of N.Y. Civ. Rights Law §§ 50-51)**

97. Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

98. As set forth herein, Defendants have violated N.Y. Civil Rights Law §§ 50-51 by invading Plaintiffs' privacy, misappropriating their likeness, and publishing on the Club's website or related social media accounts altered Images of Plaintiffs which made it appear as though Plaintiffs were employed at the Club, or endorsed the Club.

99. At all relevant times, the Club's website and social media accounts were used and operated by Defendants for advertising and trade purposes.

100. The Club's website and social media accounts were designed to attract business to the Club and generate revenue for Defendants.

101. Upon information and belief, Defendants use of Plaintiffs' Images did in fact attract clientele and generate business for the Club.

102. At no point did any Defendant ever receive permission or consent, be it written or otherwise, to use any Plaintiffs' Image on their website or social media account.

103. Defendants were at all relevant times aware that they never received any Plaintiffs' permission or consent to use their Images on any website or social media account, or on any other medium, in order to promote the Club.

104. At no point did Defendants ever compensate Plaintiffs for its use of their Images.

105. No applicable privilege or authorization exists for Defendants' use of Plaintiffs' Images.

106. Due to Defendants' violation of Plaintiffs' rights of privacy and publicity under sections 50 and 51 of the N.Y. Civil Rights Act, Plaintiffs have been damaged in an amount to be determined at trial and are likewise entitled to exemplary and punitive damages.

107. In addition, and pursuant to section 51 of the N.Y. Civil Rights Act, Plaintiffs hereby requests an Order permanently enjoining Defendants from violating Plaintiffs' right to privacy and publicity.

108. In addition, and likewise pursuant to section 51 of the N.Y. Civil Rights Act, Plaintiffs hereby request an award of punitive damages, in an amount to be determined at trial, due to Defendants knowing and intentional violation of their statutory rights to privacy and publicity.

**FOURTH CAUSE OF ACTION**
**(Violation of N.Y. General Business Law § 349:**
**N.Y. Deceptive Trade Practices Act)**

109. Plaintiffs hereby repeat and reallege each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

110. Defendants operated the Club's website and social media accounts in order to promote the Club, to attract clientele thereto, and to thereby generate revenue for Defendants. As such, Defendants' operation of the website and social media accounts, and their publication of Images thereon, was consumer-oriented in nature.

111. Defendants published Plaintiffs' Images on the Club's website and social media accounts in order to create the false impression that Plaintiffs were either employees working at

the Club or endorsed the Club.

112. As such, Defendants' intent in publishing Plaintiffs' Images was to mislead the public as to Plaintiffs' employment at and/or affiliation with the Club.

113. As Defendants were at all times aware, Plaintiffs never worked at the Club, never endorsed the Club, and never had any affiliation with the Club.

114. Defendants' publication of Plaintiffs' Images was done without any Plaintiffs' consent and was misleading in a material respect because it created the impression that Plaintiffs were employees working at the Club, or endorsed the Club.

115. As a result of Defendants' unauthorized and misleading publication of Plaintiffs' Images on their Club's website and social media accounts, each of the Plaintiffs' reputations was injured, and each of the Plaintiffs' ability to market herself as a model was injured.

116. As a result of Defendants' unauthorized and misleading use of Plaintiffs' Images, Plaintiffs have suffered damages in an amount to be determined at trial, including punitive and exemplary damages.

**DEMAND FOR JURY TRIAL**

117. Plaintiffs demand trial by jury.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully request Judgment in their favor and against Defendants as follows:

(a) For actual damages, in an amount to be determined at trial, relating to Plaintiffs' first through fourth causes of action;

(b) For an order permanently enjoining Defendants from using Plaintiffs' Images to promote the Club;

(c) For punitive damages, in an amount to be determined at trial;

(d) For all costs and attorneys' fees incurred by Plaintiffs in the prosecution of this Action;

(e) For such other and further relief as the Court may deem just and proper.

Dated: New York, New York
December 14, 2018

**THE CASAS LAW FIRM, P.C.**

By: /s/ John V. Golaszewski
John V. Golaszewski, Esq.
1745 Broadway, 17th Floor
New York, New York
T: 855.267.4457
F: 855.220.9626

*Attorneys for Plaintiffs*